**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000 (Telephone)
(212) 309-6001 (Fax)
*Attorneys for Defendant Progressive Casualty Insurance Company*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

NICHOLAS CELLI, JONATHAN LALLY,        :
TIFFANY FINCH and RUSSELL SMITH,        :
*individually and on behalf all others similarly*        :
*situated*,        :
        :
                  Plaintiffs,        :
        :        2:17-cv-01144-SJF-GRB
v.        :
        :
PROGRESSIVE CASUALTY INSURANCE        :
COMPANY,        :
        :
                Defendant.        :

-------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CLAIMS OF CGA PLAINTIFFS TIFFANY FINCH AND RUSSELL SMITH

Morgan Lewis & Bockius LLP
Christopher A. Parlo
Melissa C. Rodriguez

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .........................................................................................................2

I.  THIS COURT CAN AND SHOULD CONSIDER THE CGA JOB
DESCRIPTIONS IN DECIDING THIS MOTION ..........................................2

II.  THIS COURT SHOULD DISMISS FINCH AND SMITH'S OVERTIME
CLAIMS ...........................................................................................................5

    A.  Finch and Smith's Exempt Status Can Be Resolved On A Motion to
Dismiss. .................................................................................................5

    B.  Claims Adjusters, Like Plaintiffs Smith and Finch, Perform
Administrative Work, Not Production Work. .......................................8

    C.  As CGAs, Smith and Finch Exercised Discretion and Independent
Judgment With Regard to Matters of Significance. ............................12

III.  PLAINTIFFS' MISDIRECTION CONCERNING A PRIOR LITIGATION
CANNOT SAVE FINCH AND SMITH'S CLAIMS .....................................14

CONCLUSION ....................................................................................................17

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Beaulieu v. Vermont*,
   No. 10-cv-32, 2010 WL 3632460 (D. Vt. Aug. 5, 2010) ........................................................5

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................................2

*Cheatham v. Allstate Ins. Co.*,
   465 F.3d 578 (5th Cir. 2006) ............................................................................................7, 12

*Chen v. Major League Baseball*,
   6 F. Supp. 3d 449 (S.D.N.Y. 2014) .......................................................................................5

*Copely v. Fla. Physicians Ins. Co.*,
   No. 07-2100, 2008 WL 544875 (M.D. Fla. Feb. 26, 2008)....................................................5

*D'Amato v. Five Star Reporting, Inc.*,
   80 F. Supp. 3d 395, 416 (E.D.N.Y. 2015)..........................................................................8, 10

*Davis v. JPMorgan Chase & Co.*,
   587 F.3d 529 (2d Cir. 2009) .................................................................................................11

*Estrada v. Maguire Ins. Agency, Inc.*,
   No. 12-cv-604, 2014 WL 795996 (E.D. Pa. Feb. 28, 2014)..........................................7, 12, 13

*Fernandez v. Zoni Language Centers, Inc.*,
   No. 15-cv-6066, 2016 WL 2903274 (S.D.N.Y. May 18, 2016)................................................5

*Grant v. Abbott House*,
   No. 14-cv-8703, 2016 WL 796864 (S.D.N.Y. Feb. 22, 2016) .................................................3

*Gusdonovich v. Business Information Co.*,
   705 F. Supp. 262 (W.D. Pa. 1985) ........................................................................................10

*In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*,
   481 F.3d 1119 (9th Cir. 2007) ..................................................................................7, 9, 12, 13

*Jane Doe 130 v. Archdiocese of Portland in Oregon*,
   717 F. Supp. 2d 1120 (D. Or. 2010) .......................................................................................3

*Locke v. Am. Bankers Ins. Co. of Fla.*,
   No. 12-cv-1430, 2014 WL 2091346 (E.D. Cal. May 19, 2014)..................................7, 12, 14

*Marting v. Crawford & Co.*,
   No. 00-cv-7132, 2006 WL 681060 (N.D. Ill. Mar. 14, 2006) ................................................12

*McAllister v. Transamerica Occidental Life Ins. Co.*,
    325 F.3d 997 (8th Cir. 2003) ................................................................7, 12

*Moses v. Apple Hospitality REIT, Inc.*,
    No. 14-cv-3131, 2016 WL 8711089 (E.D.N.Y. Sept. 30, 2016)................................3

*Napert v. GEICO*,
    36 F. Supp. 3d 237 (D. Mass. 2014).......................................................7, 12, 13

*Palacio v. Progressive Insurance Co.*,
    244 F. Supp. 2d 1040 (C.D. Cal. 2002).......................................................passim

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ................................................................5

*Puddu v. 6D Global Technologies, Inc.*,
    239 F. Supp. 3d 694, 706 (S.D.N.Y. 2017) ................................................3

*Quiller v. Barclays Am. Credit, Inc.*,
    727 F.2d 1067 (11th Cir. 1984) ................................................................6, 8

*Reich v. American International Adjustment Co., Inc.*,
    902 F. Supp. 321 (D. Conn. 1994) ................................................................11

*Reich v. State of New York*,
    3 F.3d 581 (2d Cir. 1993) ................................................................10, 11

*Roe-Midgett v. CC Servs., Inc.*,
    512 F.3d 865 (7th Cir. 2008) ................................................................6, 12

*Saenz v. Ledbetter*,
    No. 5:16-CV-0063, 2017 WL 2626987 (C.D. Ca. June 15, 2017)............................3

*Smith v. GEICO*,
    590 F.3d 886 (D.C. Cir. 2010)................................................................6, 12

*Steigmann v. Democratic Party of Illinois*,
    406 F. Supp. 2d 975 (N.D. Ill. 2005)................................................................2

*Talbert v. Am. Risk Ins. Co.*,
    405 F. App'x 848 (5th Cir. 2010)................................................................12

*Withrow v. Sedgwick Claims Mgmt. Serv., Inc.*,
    841 F. Supp. 2d 972 (S.D. W. Va. 2012)................................................7, 12, 14

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ................................................................3

**STATUTES**

29 U.S.C. § 541.202(a) ............................................................................................ 12

FLSA ................................................................................................................. passim

FLSA 2005-25 (August 26, 2005) ........................................................................... 12

**OTHER AUTHORITIES**

29 C.F.R. § 541.1(a)-(e) (2003) ............................................................................... 10

29 C.F.R. § 541.200(a) ............................................................................................ 12

29 C.F.R. § 541.202(b) ............................................................................................ 14

29 C.F.R. § 541.203(a) ........................................................................................... 6, 7

## PRELIMINARY STATEMENT

In directing Defendant to file this motion,[1] this Court clearly recognized that: (1) numerous courts and the DOL have found claims adjusters to be exempt; and (2) in an effort to distinguish CGAs from MRRs, the Plaintiffs pled the CGA role squarely within existing authority supporting the FLSA-exemption.  Plaintiffs' Opposition completely fails to address this reality.  Instead, Plaintiffs ask this Court to play ostrich, bury its head in the sand, and ignore that:

- Finch and Smith specifically pled that they were Claim Generalist Associates ("CGAs") even though they now try to disclaim that title (Compl. ¶¶ 13, 18, 19);

- Plaintiffs specifically referenced the job descriptions for CGAs in effect during the limitations period (in and since 2014) in their Complaint, expressly alleging that Progressive "utilizes a common job description" for that position (Compl. ¶ 13);

- The factual allegations pled in their Complaint and in the job descriptions incorporated therein establish as a matter of law that the duties pled by Finch and Smith are exempt insurance adjuster duties;

- Neither Finch nor Smith denies that they performed the duties in the relevant CGA job descriptions or the insurance adjuster duties in the FLSA Regulations; and

- The FLSA Regulations and overwhelming precedent confirm that insurance adjusters, like Finch and Smith allege that they are in the Complaint, are exempt under the administrative exemption.

Plaintiffs' invitation to ignore the facts and the law should be rejected.  Instead, the Court can and should analyze <u>Plaintiffs' factual allegations</u> in light of the overwhelming authority holding that the job that Finch and Smith performed, <u>as admitted in the Complaint</u>, fits squarely under the administrative exemption.  Where, as here, the facts pled in the Complaint and in the documents referenced therein demonstrate that the Plaintiffs performed exempt duties, the Court is empowered, and legally required, to dismiss Plaintiffs' overtime claims.

Plaintiffs' reliance upon rulings, documents and testimony from a 2012 case involving a different time period, different plaintiffs and different factual allegations (including most notably

---

[1] All abbreviations herein are ascribed the same meaning as in Defendant's moving brief ("Def. Mem.").  Plaintiffs' brief in opposition to Defendant's motion is referenced as "Opposition" or "Opp."

a document from outside the limitations period) is an irrelevant distraction.  It is the facts and circumstances pertaining to Finch and Smith (as <u>currently</u> pled by them), and the period relevant to <u>their</u> claims, that matter for purposes of this motion.  When the law is applied to those facts, as alleged in <u>this</u> Complaint, it is clear that Finch's and Smith's claims should be dismissed.

## ARGUMENT

**I.      THIS COURT CAN AND SHOULD CONSIDER THE CGA JOB DESCRIPTIONS IN DECIDING THIS MOTION**

Recognizing that the applicable job descriptions are fatal to their overtime claims, Plaintiffs desperately argue that they did not reference Progressive's post-2014 CGA job descriptions in their Complaint.  *See, e.g.,* Opp. at pp. 10, 26-28.  That is simply not true. Plaintiffs pled that the "relevant time" for their claims ranges from three years prior to the filing of their Complaint to the present (i.e. February 2014 to the present).  Compl. ¶ 1.  They then alleged that "***at all relevant times****,*" Plaintiffs Finch and Smith worked as File Owners, a/k/a CGAs, for Progressive and that "Progressive ***utilizes a common job description***" for the position they held.  Compl. ¶ 13 (emphasis added).  Having made that exact allegation about a "common job description" to, *inter alia,* bolster their effort to proceed as a class, it is black-letter law that: (1) the "job description" is included by reference in their Complaint; and (2) Plaintiffs cannot avoid having it be considered by this Court.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) (considering contracts referenced in, but not attached to, the complaint); *Steigmann v. Democratic Party of Illinois*, 406 F. Supp. 2d 975, 986 (N.D. Ill. 2005) (considering job description on a motion to dismiss, even though description was not attached to the complaint, where the complaint referred to the job description).

The odd argument proffered by Plaintiffs to the contrary – suggesting via declaration that their counsel (not Plaintiffs) meant to refer to a document or documents "obtained" in 2012 in another litigation (Opp. at p. 12), rather than to the actual Progressive CGA job descriptions from

2

the relevant time period – should be summarily rejected.  The Complaint expressly refers to "job descriptions" from the relevant period, not to a screen shot or other document from some other, earlier, time.  Compl. ¶¶ 1, 13.  Moreover, Finch did not even work for Progressive until October 2013 (Compl. ¶ 6) rendering it impossible for any pre-2012 document to apply to her.  It would turn Fed. R. Civ. P. 8 on its head if parties could simply disavow what they plead in a case when it is convenient or self-serving to do so.  *See, e.g., Saenz v. Ledbetter*, No. 5:16-CV-0063, 2017 WL 2626987, at *6 (C.D. Ca. June 15, 2017) (recommending denial of motion to amend and dismissal of action with prejudice after noting that "Plaintiff cannot cure the fatal deficiencies in the [complaint] without contradicting the documents referred to in the [complaint], maintaining his conclusory allegations that are not entitled to any assumption of truth, and disavowing his own well-pled preexisting allegations in the challenged pleadings"); *Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1142 n. 4 (D. Or. 2010) ("the merits of [defendants'] motion to dismiss must be measured against the allegations of [plaintiff's] pleading rather than against the argument offered by her counsel, so I disregard counsel's disavowal of [plaintiff's] allegations"); *see also Puddu v. 6D Global Technologies, Inc.*, 239 F. Supp. 3d 694, 706 (S.D.N.Y. 2017) (rejecting assertions made for the first time in opposition to motion to dismiss for failure to state a claim and granting motion after noting that "Plaintiffs may not use motion to dismiss briefing to amend their pleadings"); *Grant v. Abbott House*, No. 14-cv-8703, 2016 WL 796864, at *8 (S.D.N.Y. Feb. 22, 2016) (rejecting argument that the court could read into the complaint language contrary to the pleaded allegations, noting that a plaintiff may not amend a complaint through briefs filed in opposition to a motion to dismiss); *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) (affirming dismissal of complaint, noting that party may not amend pleading through statements in briefs); *Moses v. Apple Hospitality REIT, Inc.*, No. 14-cv-3131, 2016 WL 8711089, at *7 (E.D.N.Y. Sept. 30, 2016) ("Plaintiff may not amend

3

the Complaint through her opposition brief by asking the Court to read something into the Complaint that was not alleged").

Moreover, counsel's declaration begs the question of why Plaintiffs (or their counsel) would be relying on any document from outside the relevant statute of limitations period in this case rather than on the relevant job descriptions.  Plaintiffs' Opposition provides the answer – Plaintiffs do not want the Court to focus on the actual CGA job descriptions because they defeat Plaintiffs' overtime claims.  However, because Plaintiffs reference the CGA "job descriptions" from the relevant period in their Complaint, the Court can, and should, consider those job descriptions in deciding the instant motion.

In addition to the job descriptions, the Court may also rely on the facts Plaintiffs have pled.  In their Opposition Plaintiffs admit that ". . . they included [in the Complaint] a list of the general duties that they performed . . .."  Opp. at p. 9 citing Compl. ¶ 13; *see also* Opp. at p. 22 (". . . the Complaint does list the duties of a File Owner [a/k/a CGA]").  According to Plaintiffs, "those allegations were added simply to paint the picture of the duties of the position."  *Id*.  This Court clearly may rely on those allegations and that "picture," including that Plaintiffs completed coverage and liability decisions, were accountable for making accurate damages assessments for all exposures, conducted initial and ongoing file assessments, were the primary point of contact with customers and remained the person the customer could rely upon, were accountable for recognizing potential exposure and adjusting reserves, conducted field/scene investigations and verified that any damages were consistent with the reported facts on loss and impact (i.e. sought out any fraud).  Complaint ¶ 13.  As discussed below, the DOL and every Court faced with those facts has held that the adjusters at issue were exempt.  *See* pp. 5-7, *infra*.  Accordingly, wholly apart from the referenced job descriptions, which contain the same and more facts, Defendant's motion should be granted.

II.    **THIS COURT SHOULD DISMISS FINCH AND SMITH'S OVERTIME CLAIMS**

    A.    **Finch and Smith's Exempt Status Can Be Resolved On A Motion to Dismiss.**

Plaintiffs' assertion that under no circumstances can an employer move to dismiss FLSA overtime claims based upon a plaintiff's exempt status is simply false.  Taken to its extreme, Plaintiffs' position would mean that if, as here, an employee pleads that his job duties match those recognized as exempt in the FLSA Regulations, the employer is nonetheless forced to litigate a putative class action through class proceedings, discovery and summary judgment, and the courts are powerless to earlier rule that the overtime claims cannot survive.  But that is not the law, and, therefore, why this Court invited this motion during the initial conference.  *See* Dkt. No. 25.  *See, e.g., Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (FLSA claim may be dismissed on the basis of an exemption where exemption "appears on the face of the complaint").

While the administrative exemption is a defense, where the allegations contained in the Complaint and the facts shown by the documents referenced therein clearly show that the defense applies, the Court is empowered to dispose of claims on a motion to dismiss.  *See, e.g., Fernandez v. Zoni Language Centers, Inc.*, No. 15-cv-6066, 2016 WL 2903274 (S.D.N.Y. May 18, 2016) (granting motion to dismiss FLSA claims based upon the FLSA's professional exemption); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449 (S.D.N.Y. 2014) (granting motion to dismiss plaintiff's FLSA claims after concluding that allegations in the complaint demonstrated that the plaintiff was exempt from the FLSA); *Copely v. Fla. Physicians Ins. Co.*, No. 07-2100, 2008 WL 544875 at *2 (M.D. Fla. Feb. 26, 2008) (granting motion to dismiss FLSA claims where the complaint conceded the plaintiffs were insurance claims adjusters and no facts to the contrary were asserted); *Beaulieu v. Vermont*, No. 10-cv-32, 2010 WL 3632460, at *6 (D. Vt. Aug. 5, 2010) ("Where the Complaint contains allegations that unequivocally qualify

5

an employee as exempt from the overtime provisions, a 12(b)(6) motion will be granted.").

Indeed, as Plaintiffs concede in their Opposition, "a complaint may be dismissed under Rule

12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the

defense clearly appears on the face of the complaint."  Opp. at p. 9, *citing Quiller v. Barclays*

*Am. Credit, Inc.,* 727 F.2d 1067 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985).

This is just such a case.  Insurance claims adjusters performing the duties alleged by

Finch and Smith have long been recognized by the Department of Labor and courts across the

country as exempt.  *See* Def. Mem. pp. 9-11.  In fact, in the FLSA Regulations, the DOL

specifically identified insurance claims adjusters as examples of employees satisfying both the

second and third elements of the administrative exemption.  Specifically, the Regulations state:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a).  Plaintiffs even quote this language at page 21 of their Opposition

and state "The Complaint ***does*** include these allegations."  *See* Opp. at p. 21 (emphasis

added).

In support of its conclusion regarding claims adjusters, the DOL even cited a case

*granting summary judgment to Progressive regarding the exempt status of one of its adjusters* as

an example of individuals performing exempt duties.  *See* 69 Fed. Reg. Vol. 69, No. 79, 22122,

22144-45 (2004) (citing the job duties performed by a Progressive adjuster in *Palacio v.*

*Progressive Insurance Co.*, 244 F. Supp. 2d 1040 (C.D. Cal. 2002)).  Multiple courts across the

country have reached the same conclusion regarding insurance claims adjusters.  *See, e.g., Smith*

*v. GEICO*, 590 F.3d 886, 897 (D.C. Cir. 2010) (insurance claims adjusters exempt)*; Roe-Midgett*

*v. CC Servs., Inc.*, 512 F.3d 865 (7th Cir. 2008) (same); *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) (same); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578 (5th Cir. 2006) (same); *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997 (8th Cir. 2003) (same); *Locke v. Am. Bankers Ins. Co. of Fla.*, No. 12-cv-1430, 2014 WL 2091346, at \*12 (E.D. Cal. May 19, 2014) (same); *Estrada v. Maguire Ins. Agency, Inc.*, No. 12-cv-604, 2014 WL 795996, at \*9 (E.D. Pa. Feb. 28, 2014) (same); *Napert v. GEICO*, 36 F. Supp. 3d 237 (D. Mass. 2014) (same); *Withrow v. Sedgwick Claims Mgmt. Serv., Inc.*, 841 F. Supp. 2d 972 (S.D. W. Va. 2012) (same).

On this point, it is telling that Finch and Smith do <u>not</u> deny – in their Complaint or in their Opposition – that they performed the duties set forth in the detailed CGA job descriptions that applied to them during the limitations period and which are incorporated by reference in their Complaint.[2]  Instead, Plaintiffs argue that they sufficiently hid those duties from the Court in their pleading such that the Court is powerless to dismiss their claims.  Opp. at pp. 10, 25-28. For example, at page 25 of their Opposition, Plaintiffs include a chart detailing the insurance claims adjuster duties in 29 C.F.R. § 541.203(a) and a column suggesting that they did not include a verbatim recitation of the words from the Regulation in the text of their Complaint. Missing, however, is any argument or even assertion (much less proof) that Finch and Smith did not actually perform the duties set forth in 29 C.F.R. § 541.203(a).  Plaintiffs' new hide-the-ball gamesmanship should not be countenanced, particularly where they have invoked the job descriptions for the CGA position in their Complaint when it benefitted them to do so, and they admit in their Opposition that they "included a list of the general duties they performed" to "paint a picture" for the public and this Court.  Opp. at p. 9.

Plaintiffs' suggestion that Progressive had to plead facts to establish its administrative

---

[2] Indeed, Finch has continued to represent on her publicly-available LinkedIn profile that she was a "Claims Adjuster" at Progressive.  *See* https://www.linkedin.com/in/tiffany-finch-4a29b840.

exemption affirmative defense (Opp. at pp. 9-10) ignores the fact that Plaintiffs themselves plead the facts needed to demonstrate the applicability of the exemption.  Nothing more is required. *See, e.g., Quiller,* 727 F.2d 1067.  The factual allegations in the Complaint and incorporated by reference therein, applied to well-established legal authority, confirm that Finch and Smith were exempt under the administrative exemption.  Therefore, their overtime claims must be dismissed.[3]

### B.     Claims Adjusters, Like Plaintiffs Smith and Finch, Perform Administrative Work, Not Production Work.

Recognizing that the Complaint and job descriptions preclude their prevailing on the merits with respect to their duties, Plaintiffs argue that they fall on the "production" side of the administrative-production dichotomy.  Their argument is just plain wrong.  Finch and Smith have not pled, and do not now claim, that as CGAs they were involved in the creation of any insurance product or that they sold insurance policies or any other product.  *See generally* Complaint; Opposition.  Nor do they allege that their duties were akin to producing a product on a factory floor or production line.  *Id.  See also, e.g.*, *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 416 (E.D.N.Y. 2015) (noting the distinction between employees directly producing goods and services and those performing administrative work applicable to the running of any business).

Moreover, as to claims adjusters at Progressive, who Plaintiffs plead perform the duties in the job descriptions Plaintiffs reference in this Complaint, the DOL has held that those individuals are exempt under the administrative exemption.  *See* 69 Fed.Reg. at 22,145 (DOL citing *Palacio v. Progressive*, and noting that "claims adjusters are not production employees

---

[3] Plaintiffs also assert that Defendant's motion is "improper" because "[i]t claims that Plaintiffs failed a pleading burden that the law simply does not impose."  Opp. at 10.  Defendant makes no such argument.  To the contrary, Plaintiffs have pled more than enough about what the CGAs do for this court to rule as a matter of law.  Defendant's argument is simply that, having pled facts to distinguish the CGAs from MRRs and to seek a class (common job description), Plaintiffs cannot now disavow what they pled.

because the insurance company is in the business of writing and selling automobile insurance, rather than in the business of producing claims.").  Finch and Smith do not (and cannot) allege that they write and/or sell insurance or anything else for that matter.  As such, they cannot be considered "production" employees.  *Id.*  Moreover, given that the vast majority of Progressive customers never make a claim against the policy they purchase, and so the Plaintiffs would not interact with them at all, it strains credulity to suggest that CGAs (claims adjusters) "produce" the goods and services that the insurance company offers to the public.  *Palacio*, 244 F. Supp. 2d at 1047.

Confronted with this reality, Plaintiffs incorrectly suggest that the Court should disregard existing precedent and analyze the administrative-production dichotomy on a department-by-department basis.  Opp. at p. 20.  More specifically, Plaintiffs argue that because Finch and Smith were part of Progressive's claims department, the court should focus on the "products" generated by the claims department ("claims resolutions") to the exclusion of the "products" generated by Progressive as a company (insurance policies).  *Id.*  Plaintiffs' argument has expressly been rejected by the Ninth Circuit Court of Appeals in the context of claims adjusters.  *See In re Farmers Ins.,* 481 F.3d at 1123 (because adjusters represent the insurance company to the public through their handling of claims and directly impact the insurer's customer base, their work "affects business operations to a substantial degree, *even though their assignments are tasks related to the operation of a particular segment of the business*") (emphasis supplied).  Indeed, Plaintiffs' proposal would turn the law on its head, as it would mean that *every* employee, in *every* company, in *every* industry falls on the production side of the dichotomy.[4] That is not the law.

---

[4] For example, CPAs employed by a widget manufacturer would be seen as producing the "product" of the accounting department of the widget company and human resources managers would be seen as producing the "product" of the human resources department of the widget company.  However, both are quintessentially exempt positions.

Moreover, no matter how Finch and Smith try to spin them, the duties they claim they performed as CGAs, including making coverage and liability decisions, assessing claims, setting reserves, completing scene investigations, identifying fraud, negotiating repair costs and serving as the face of Progressive with claimants, are "administrative" duties and not "production" duties. *Palacio*, 244 F. Supp. 2d at 1047; *D'Amato,* 80 F. Supp. 3d at 416 (duties in the nature of representing the company, such as customer communications and support, are administrative as distinguished from sales duties which would be production duties); Compl. ¶ 13; CGA Job Description, Exs. A-B to Downing Declaration.[5]

Plaintiffs' reliance on cases decided over a decade before the 2004 amendments to the FLSA regulations[6] (when the DOL explicitly acknowledged that insurance claims adjusters are exempt), and on cases involving inapposite positions, does not change the foregoing analysis. In *Reich v. State of New York*, 3 F.3d 581 (2d Cir. 1993), the court's decision hinged on whether the Bureau of Criminal Investigations was in the business of conducting criminal investigations (as its name suggests). In that unique context, the court held that the company's employee investigators "produced" the Bureau's product – investigations. Here, in contrast, the CGAs do not "produce" Progressive's product – insurance policies.

Next, Plaintiffs rely upon a 1985 case from the Western District of Pennsylvania – *Gusdonovich v. Business Information Co.*, 705 F. Supp. 262 (W.D. Pa. 1985). Not only was that

---

[5]  For example, the job descriptions make clear that a CGA:
   * "Interviews, collects and documents information from customers, agents, witnesses, police reports, etc.
   * Interprets policies and analyzes information gathered to determine course of action.
   * Ensures that all damage is consistent with the report of the accident.
   * Negotiates with customers and claimant carriers when claims cannot be settled in full.
   * Recognizes applicable exposures and endorsements.
   * Refers questionable claims for further investigation.
   * Resolves total losses to include execution of total loss paperwork.
   * Recognizes subrogation opportunities and refer accordingly. . . ." *See* Job Description, Ex. B to Downing Declaration.

[6]  The DOL's 2004 revisions to the FLSA regulations materially changed the administrative exemption analysis, including by eliminating the "short" and "long" tests of primary duties. *See* 29 C.F.R. § 541.1(a)-(e) (2003).

case decided nineteen years before the DOL revised the FLSA regulations, but it involved an "investigator" who worked for a company formed for the sole purpose of investigating and collecting information for insurance companies.  In that context, as in *Reich*, the court held that Gusdonovich fell on the "production" side of the administrative-production dichotomy because he was in the business of "producing" the company's product – investigations.   Here, again, there is no allegation in the Complaint that Finch and Smith created or sold Progressive's insurance products.

Plaintiffs reliance on *Reich v. American International Adjustment Co., Inc.*, 902 F. Supp. 321 (D. Conn. 1994) ("*AIAC*") is similarly misplaced.  Again, that case was decided a decade prior to the revisions to the FLSA regulations.  What's more, that case involved "automobile appraisers" working for an insurance adjustment company (and NOT an insurance company).[7] The court held that because the sole nature of the company's business was creating damage evaluations, the appraisers who performed those evaluations fell on the "production" side of the dichotomy.  *AIAC* did not involve insurance claims adjusters working for an insurance company that, like Progressive, is in the business of creating and selling insurance products and policies. In fact, the court in *AIAC* specifically distinguished the plaintiffs in that case from insurance claims adjusters, noting that the latter perform exempt functions like negotiating and settling claims with insureds and dealing with issues of coverage or liability.   *AIAC*, 902 F.Supp. at 324.[8]   In short, none of the cases upon which Plaintiffs rely support the conclusion that CGAs fall on the "production" side of the administrative-production dichotomy.

---

[7] As an adjustment company, the defendant in *Reich* did not produce insurance policies, but simply adjusted claims, *i.e.*, its sole "product" was claims adjusting.

[8] Plaintiffs also cite *Davis v. JPMorgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) in support of their administrative-production dichotomy argument.  That case is inapposite, as the court concluded that loan underwriters working for a bank were tasked with producing the bank's product (loans).  The case did not involve insurance adjusters employed by an insurance company.

**C.      As CGAs, Smith and Finch Exercised Discretion and Independent Judgment With Regard to Matters of Significance.**

The third prong of the administrative exemption requires that the employee's primary duty include the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).  In other words, the employee's primary duty must involve "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 U.S.C. § 541.202(a).  In opinion letters and the FLSA Regulations, the DOL has concluded that claims adjusters performing the duties alleged by Finch and Smith exercise sufficient discretion and independent judgment on matters of significance.  *See, e.g.,* DOL Opinion Letter, FLSA 2005-25 (August 26, 2005) (insurance claims adjusters exercised sufficient discretion on matters of significance when they used their own judgment in determining liability, the worth of a claim, and how to handle negotiations with claimants);  69 Fed.Reg. at 22,145 (noting that insurance claims adjusters who plan and carry out investigations, negotiate with claimants and settle claims exercise discretion and independent judgment on matters of significance).

Courts across the country have reached the same conclusion in numerous cases involving job duties similar to those of Finch and Smith.  *See Smith*, 590 F.3d at 897 (GEICO's auto damage adjusters exercised discretion and independent judgment); *Roe-Midgett*, 512 F.3d 865 (insurance claims adjusters exercise discretion an independent judgment); *In re Farmers*, 481 F.3d 1119 (same); *Cheatham*, 465 F.3d 578 (same); *McAllister*, 325 F.3d 997 (same); *Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 854 (5th Cir. 2010) (same); *Palacio*, 244 F. Supp. 2d 1040 (same); *Locke*, 2014 WL 2091346, at *12 (same); *Napert*, 36 F. Supp. 3d 237 (same); *Withrow*, 841 F. Supp. 2d 972 (same); *Marting v. Crawford & Co.*, No. 00-cv-7132, 2006 WL 681060, at * 12 (N.D. Ill. Mar. 14, 2006) (same); *Estrada*, 2014 WL 795996, at *9 (no reasonable jury could find that insurance claims adjusters' duties, which included interviewing, inspecting

12

property damages, evaluating coverage and settling claims, did not involve the exercise of discretion).

In the context of exempt status challenges by insurance claims adjusters, courts have specifically observed that the following activities require the exercise of discretion and independent judgment with regard to matters of significance: interviewing insureds and witnesses; inspecting property damage through pictures; reviewing factual information to ensure that estimates are reasonable; verifying whether actual damage is consistent with the claimed damage; identifying  potential fraud; evaluating whether coverage would extend to a particular claim; making decisions concerning coverage and/or providing recommendations regarding coverage to supervisors; determining liability through the application of comparative negligence; adjusting reserve levels; and negotiating and settling claims without being required to seek supervisor oversight or intervention.  *See, e.g., Estrada*, 2014 WL 795996; *Napert*, 36 F. Supp. 3d at 245-46; *In re Farmers*, 481 F.3d at 1129.  According to the Plaintiffs' Complaint and the CGA job descriptions referenced therein, Finch and Smith performed those activities.  *See* Compl. ¶ 13 (alleging that CGAs complete and communicate coverage and liability decisions; assess and adjust claim reserves; perform damages assessments and verify that damages are paid consistent with the reported facts of loss and points of impact); Job Description, Ex. B to Downing Declaration (CGAs investigate, analyze, and determine the extent of Progressive's liability concerning loss or damages, and attempt to affect settlement with claimants).  Those activities demonstrate conclusively that Finch and Smith exercised discretion and independent judgment on a daily basis with respect to handling claims.

Further, Finch and Smith acknowledge in the Complaint that, as CGAs, they had the authority to bind Progressive to determinations regarding coverage and liability, and that they attempted to negotiate settlements and resolve initial disputes with Claimants.  Compl. ¶13.

13

These decisions can and do have a significant financial impact on Progressive (e.g., whether or not to pay claims and, if so, in what amount) and its customers (*e.g.,* potential premium increases, potential out-of-pocket expenses not covered by the insurance policy) such that they have repeatedly been recognized as involving "matters of significance" for purposes of the administrative exemption. *See, e.g., Locke*, 2014 WL 2091346 (claims adjusters with the authority to settle claims or even make recommendations are exercising discretion with respect to matters of significance); *Withrow*, 841 F. Supp. 2d 972; 29 C.F.R. § 541.202(b).

As the FLSA Regulations, DOL Opinion Letters and decisions from courts across the country make clear, the job duties alleged by Finch and Smith and confirmed in the applicable CGA job descriptions easily satisfy the discretion and independent judgment prong of the administrative exemption. Consequently, Finch and Smith cannot sustain their FLSA claims.

## III.   PLAINTIFFS' MISDIRECTION CONCERNING A PRIOR LITIGATION CANNOT SAVE FINCH AND SMITH'S CLAIMS

Recognizing that their own allegations and the documents incorporated into their Complaint defeat Finch and Smith's claims, Plaintiffs resort to submitting out-of-context testimony and misleading materials from a prior litigation[9] in which neither Finch nor Smith were involved. In doing so, Plaintiffs clearly hope to distract this Court from the facts and circumstances of this case. However, the materials from the prior litigation and, indeed, that entire litigation, are immaterial to this motion and this proceeding.

---

[9] Plaintiffs refer to the prior *Carlone* litigation against Progressive to insist that their claims are sufficient to withstand a motion to dismiss and/or a motion for summary judgment. While Plaintiffs cite to the docket entry addressing the summary judgment motion in that case, they avoid citing to the transcript from the summary judgment argument wherein the Court denied Progressive's motion from the bench (even though it is available online on the same docket). A review of that transcript (a copy of which is attached to the Declaration of Melissa C. Rodriguez ("Rodriguez Decl.") at Ex. A) reveals that the court in *Carlone* acknowledged that it did not understand the exemption defense being asserted (even asking whether the defense was that the company paid "in an irregular pay system") and that the court ruled in two sentences without any analysis or reasoning. *Id.* Accordingly, that decision, aside from being non-binding, is neither dispositive nor persuasive with regard to the instant motion.

14

First, this Court needs to be aware of how Plaintiffs are trying to twist and inaccurately portray materials from the prior action in an effort to save their current claims. Plaintiffs submit a declaration from their counsel, indicating that he (not Finch or Smith) was referring to a 2012 document (and not a Progressive job description) when he prepared the allegations in the Complaint that specifically mention "job descriptions" from the time period relevant to this case. Hayber Decl. ¶¶ 4-6. If this were true, Plaintiffs' counsel is at best: (1) trying to pass off documents obtained as part of the prior litigation as a "job description" applicable to the current case; and (2) citing a document from outside the limitations period in an effort to convince the court that Finch and Smith have valid claims for the period between 2014 and 2017. *Id.*; Opp. at p. 12.[10]

In another attempt at misdirection, Plaintiffs state that Lori Niederst testified on behalf of Defendant that CGAs did not perform certain functions. Opp. at pp. 27-28. That is a gross misrepresentation as Ms. Niederst was not a Rule 30(b)(6) deponent and did not testify as stated by Plaintiffs.[11] First, Ms. Niederst did not testify as a corporate representative and was never designated as such. She testified as a fact witness – in her personal capacity as someone who had worked within Progressive's Human Resources group. Niederst Dep. 14:14-24 (at Rodriguez Decl. Ex. B). Plaintiffs also neglect to inform the Court that Ms. Niederst testified that she was never a CGA, she never managed CGAs, and she only had a "general

---

[10] Notably, Plaintiffs have done nothing to seek to amend the Complaint to clear up the misrepresentation they now assert is present in their current pleading. Plaintiffs' counsel also neglects to inform the Court that testimony in the prior litigation confirmed that Progressive does not have a position of "File Owner," as Plaintiffs suggest in their Opposition and in the Complaint, and that "File Owner" is merely a name that some Progressive employees use internally to refer to a CGA. Niederst Dep. 18:23 ("File owner is not a job title."); 37:3-7 (at Rodriguez Decl. Ex. B).

[11] As Ms. Niederst's deposition transcript is neither attached nor referenced in the Complaint, her testimony cannot be considered in the context of this 12(b)(6) motion, which is based on Plaintiffs' allegations in the Complaint. Defendant includes additional references to Ms. Nierdest's (and other *Carlone* witnesses') testimony because Plaintiffs raised the issue and simply to clarify Plaintiffs' misstatements concerning Ms. Nierdest's and other deposition testimony.

understanding" of what duties CGAs performed from her time within the claims human resources organization. *Id.* 5:15-8:15; 14:14-24; 26:15-27:6; 37:11-13; 81:17-22.  Second, she testified that she was <u>not</u> familiar with the CGA job as it existed in <u>2006</u> (the date the job description presented at her deposition was prepared). *Id.* 109:14-110:4.  Ms. Niederst answered "I don't know" numerous times when asked whether CGAs perform certain tasks, and indicated that questions concerning the specifics of CGAs duties would be better suited for supervisors and managers who actually interact with CGAs. *See, e.g., id.* 90:4-92:10.  As such, her testimony could not possibly prove, or even be relevant to, whether job descriptions effective in 2014 and later are inaccurate, nor could any of that testimony show that Finch and Smith did not perform the exempt functions which they admit performing, and which are contained in the <u>current</u> job descriptions.

Plaintiffs also neglect to inform the Court that, in describing her general understanding of the CGA role, Ms. Niederst testified:

> I mean generally the responsibilities of a file owner [a term she used to refer to a CGA] are to gather the facts of loss, make a decision about coverage and determine liability and coordinate the process with the customer so that ultimately they can make the claim settlement working with the customer.

Niederst Dep. 80:5-10 (at Rodriguez Decl. Ex. B).  Those responsibilities align squarely with the duties and job descriptions referenced in the Complaint and the FLSA Regulations stating that insurance adjusters are exempt employees.

Plaintiffs also bizarrely cling to the term "File Owner" in the hope that the Court will be confused into thinking there is no CGA position and so the CGA job description they reference should not apply. *See, e.g.,* Opp. at pp. 2, 6, 9, 12.  First, regardless of any title, Plaintiffs admit performing the exempt duties they list in paragraph 13 of the Complaint.  Second, Plaintiffs know from the prior case, upon which they so heavily rely, that their clients admitted there was no job description they had ever seen for a "File Owner" position.  Rodriguez Decl. Ex. C

16

(Carlone Dep. Tr. p. 34) ("Q: . . .have you ever seen a job description at Progressive for a, quote, file owner? A: No.").[12]    Accordingly, this Court should quickly look past this attempt at diversion.

For all the foregoing reasons, Plaintiffs' attempt to muddy the waters with irrelevant material from as far back as 2006 should be rejected.

## CONCLUSION

As their own Complaint and the job descriptions referenced therein confirm that Finch and Smith performed insurance claims adjuster duties that rendered them exempt from the FLSA's overtime requirements, Finch and Smith's claims should be dismissed in their entirety, with prejudice, together with such other and further relief as this Court deems appropriate.

Dated: New York, NY
         October 13, 2017

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Christopher A. Parlo*
Christopher A. Parlo
Melissa C. Rodriguez

*Attorneys for Progressive Casualty Insurance Company*

---

[12] *See also* Rodriguez Decl. Ex. D (Deposition of Kathy Kramer, Compensation Senior Manager, August 7, 2012), p. 83 ("I am not – we do not have a job title called file owner.  What I am familiar with is the claims generalist associate job description and I can speak to that.  I am familiar with the content of the claims generalist associate job description.  There is no job term 'file owner,' so I can't speak to that."); *see also* Nierderst Dep. (at Rodriguez Decl. Ex. B), pp. 37-38 (explaining that the term "file owner" is used interchangeably with, or as a synonym of, CGA); Rodriguez Decl. Ex. E (Deposition of Joseph Smith, Progressive Claims Manager, August 6th, 2012), p. 36 ("The File Owner's another name for Claims Generalist Associate").  *See* fn 11, *supra.*